**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| FIRST NATIONAL REALTY PARTNERS LLC, *et al.*,<br><br>             Plaintiffs,<br><br>        v.<br><br>JAMES MAY, *et al.*,<br><br>             Defendants. | Civil Action No. 25-1119 (MAS) (JBD)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Plaintiffs First National Realty Partners LLC ("FNRP"), FNRP Realty Advisors LLC, Anthony Grosso, Christopher Palermo, Jared Feldman, Andrew Denardo, Kurt Padavano, Bill Comeau, Fred Battisti, Jr., Michael Hazinski, Andrea Boitnott, Sam Collier, Mike Law, Andrea White, Brandywine Crossing Realty Fund LLC, Champions Village Realty Fund LLC, PC Center Realty Fund LLC, Crowe's Crossing Realty Fund LLC, HV Center Realty Fund LLC, McAlpin Square Realty Fund LLC, Sand Hill Plaza Realty Fund LLC, Southland Crossings Realty Fund LLC, SS Tulsa Center Realty Fund LLC, Summerdale Plaza Realty Fund LLC, Village at Pitt Mills Realty Fund LLC, Westwood SC Realty Fund LLC, PC Center TIC 1 Member LLC, CTS Center Realty Fund LLC, CS Center Realty Fund LLC, CK Center Realty Fund LLC, Tropicana Centre LV Realty Fund LLC, McAlpin Square TIC 5 LLC, Maple Park SC TIC 12 Member LLC, Tannehill TIC 5 LLC, and Bishops Corner SC Realty Fund LLC's (collectively, "Plaintiffs") Motion for a Temporary Restraining Order and Preliminary Injunction. (ECF No. 2.) Defendants James May, Anthony Musto, Patricia Thomas,

Jonathan Ciangiulli, Abba Kader, Cory Tereick, and Stanley Gruber (collectively, "Defendants")

opposed (ECF No. 14), and Plaintiffs did not file a reply.

The Court has considered the parties' written submissions and decides the motion without

oral argument pursuant to Local Civil Rule 78.1(b). For the reasons set forth below, Plaintiffs'

Motion for a Temporary Restraining Order and Preliminary Injunction is denied.

## I.    BACKGROUND

### A.    Factual Background

Plaintiffs filed a verified complaint ("Complaint") on February 10, 2025 against

Defendants, seeking to enjoin them from filing their complaint ("Draft Complaint")[1] or

commencing any action in any court based on the same or similar allegations to those set forth in

the Draft Complaint. (*See generally* Compl., ECF No. 1.)

#### 1.    Defendants' Contractual Agreements with Plaintiffs

FNRP is a private equity firm specializing in commercial real estate investments in the

United States. (*Id.* ¶ 5.) FNRP serves as an investment sponsor, creating and managing commercial

real estate investment opportunities for its investor partners. (*Id.*) "FNRP's core business involves

raising funds from high-net-worth accredited investors, and using the acquired capital to purchase

necessity-based shopping centers and other types of commercial properties." (*Id.*)

---

[1] The Draft Complaint against Defendants purportedly intended to file against Plaintiffs includes claims for: (1) mail fraud and wire fraud (Count I), (2) violation of Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO") (Count II); (3) RICO conspiracy (Count III); (4) fraudulent inducement (Count IV); (5) fraud and/or fraudulent concealment (Count V); (6) negligent misrepresentation (Count VI); (7) violations of the New Jersey Consumer Fraud Act (Count VII); (8) negligence (Count VIII); (9) conspiracy (Count IX); (10) unjust enrichment (Count X); (11) alter ego (Count XI); and (12) respondeat superior (Count XII). (Decl. of Christopher Palermo ("Palermo Decl.") Ex. 1, Draft Complaint, ECF No. 4-1.)

Sometime between 2022 and 2023, Defendants collectively invested an estimated $12 million in approximately twenty-one separate FNRP funds. (Compl. ¶ 47; Draft Compl. ¶¶ 84-90.) In connection with these investments, each Defendant entered into one or more contracts containing an arbitration clause with each of the funds they invested in. (Compl. ¶¶ 55-61; Decl. of Andrew DeNardo ("DeNardo Decl.") Exs. 1-34, ECF No. 7.) The contracts containing arbitration clauses fall into three categories: (1) Tenants-in-Common ("TIC") Interest Purchase Agreements (the "TIC Purchase Agreements"); (2) Asset Management Agreements; and (3) Subscription Application and Agreements (the "Subscription Agreements" and together with the TIC Purchase Agreements and Asset Management Agreements, the "Agreements"). (*Id.*) Each Defendant entered into either a TIC Purchase Agreement or a Subscription Agreement with each fund in which they invested. (*Id.*) The precise language of the arbitration clauses of the TIC Purchase Agreements and Subscription Agreements, however, slightly differs. (*Id.*)

Defendants who invested as TIC: (1) executed a TIC Purchase Agreement in connection with such investment (*id.* ¶ 56); and also (2) executed an Asset Management Agreement (*id.* ¶ 58). Section 8.18.1 of each TIC Purchase Agreement expressly provides as follows:

> ALL CLAIMS SUBJECT TO ARBITRATION. ANY DISPUTE OR CONTROVERSY OR OTHER CLAIM ARISING UNDER, OUT OF OR RELATING TO THIS AGREEMENT OR ANY OF THE TRANSACTIONS CONTEMPLATED HEREBY, OR ANY AMENDMENT THEREOF, OR THE BREACH OR INTERPRETATION HEREOF OR THEREOF, SHALL BE DETERMINED AND SETTLED BY BINDING ARBITRATION IN RED BANK, NEW JERSEY, IN ACCORDANCE WITH THE THEN PREVAILING RULES AND PROCEDURES OF THE LOCAL OFFICE OF THE AMERICAN ARBITRATION ASSOCIATION.

(DeNardo Decl., Exs. 4-6, 9, 10, 16, 17, 22, § 8.18.1, ECF No. 7.) The next section of each TIC Agreement contains an express waiver of each party's right to "HAVE THE DISPUTE

3

LITIGATED IN A COURT OR BY JURY TRIAL." (*Id.* § 8.18.2.) Each Asset Management Agreement contains a clause requiring arbitration of disputes between TIC and the asset manager over the asset manager's budgeting of funds for the property at issue. (*See* DeNardo Decl. Exs. 28-34, §§ 2.5.1, 2.5.5.)

Defendants who invested in non-TIC funds executed a Subscription Agreement with each fund in which they invested. (Compl. ¶ 59.) Article IV, § 9 of each Subscription Agreement contains a clause requiring arbitration of disputes "involving the [investment] fund, th[e Subscription] Agreement, or the Operating Agreement [of the fund]" and states:

> Any controversy between Subscriber and the Fund and/or the Managing Member involving the Fund, this Agreement, or the Operating Agreement will be submitted to arbitration on the request of any party to any such controversy in the county and state in which the Managing Member maintains its principal office at the time such request is made. The arbitration will comply with and be governed by the provisions of the commercial arbitration rules of the American Arbitration Association and no party to any such controversy shall be entitled to any punitive damages.

(DeNardo Decl., Exs. 1-3, 7, 8, 11-15, 18-21, 23-27.) That section further provides that, "[b]y signing this [Subscription] Agreement, Subscriber agrees to waive his or her or its right to seek remedies in court, including any right to a jury trial." (*Id.*)

### 2. *Defendants Inform Plaintiffs of Possible Litigation—Draft Complaint*

On January 31, 2025, counsel for Defendants, Mack Press, Esq. ("Press"), and General Counsel for FNRP, Zain Naqvi, Esq. ("Naqvi"), discussed by telephone call a potential lawsuit Defendants intended to file against Plaintiffs. (Compl. ¶ 61.) Two days later, on February 2, 2025, Press emailed Naqvi a copy of the Draft Complaint—captioned for filing in the District of New

Jersey—and stated that Defendants intended to file the Draft Complaint in the United States District Court for the District of New Jersey on Friday, February 7, 2025. (*Id.* ¶¶ 62, 64.)

On February 4, 2025, counsel for Plaintiffs in the instant suit, Omar Bareentto, Esq. ("Bareentto") and Geoffrey Rosamond, Esq. (collectively, "Plaintiffs' counsel"), suggested on a telephone call with Press that Plaintiffs and Defendants could potentially mediate their dispute. (*Id.* ¶ 63.) Later that day, Press rejected Plaintiffs' counsel's suggested mediation and reiterated Defendants' intent to file their Draft Complaint in federal court on Friday, February 7, 2025. (*Id.* ¶ 64.) In that same email correspondence, Press also purportedly threatened Plaintiffs by stating that "should this case proceed to litigation and become public through formal filings and press releases, the exposure and potential ramifications could escalate significantly, making the matter increasingly complex and challenging to manage." (*Id.*) Counsel for the parties engaged in continued correspondence on February 6 and 7, wherein Plaintiffs' counsel requested that the parties meet and confer before the filing of the Draft Complaint. (*Id.* ¶ 65.) Press subsequently agreed to delay the filing of the Draft Complaint until at least Monday, February 10, 2025, while Defendants considered Plaintiffs' counsel's invitation to meet and confer. (*Id.* ¶ 66.)

On February 7, 2025, Press provided Plaintiffs' counsel with a revised draft complaint (*i.e.*, the Draft Complaint), which contained additional allegations, and indicated that they planned to file on February 10, 2025. (*Id.*) After receiving a revised Draft Complaint from Press, Plaintiffs' counsel informed him that Defendants' claims in the Draft Complaint were required to be arbitrated and not litigated in the District of New Jersey or in any other court. (*Id.* ¶ 67.) On February 10, 2025, Press expressly rejected Plaintiffs' counsel position that the claims in the Draft Complaint were required to be arbitrated based on the Agreements. (*Id.* ¶ 68.) Press again emphasized his intention to file the Draft Complaint in the District of New Jersey. (*Id.*) On

February 10, 2025, Press also sent Plaintiffs' counsel an email message indicating that Defendants would not "consider negotiating" or accept anything less than the return of the full amount they invested—$12 million. (Cert. of Omar A. Bareentto ("Bareentto Cert.") Ex. 2, ECF No. 6-2.) Press further related to Plaintiffs' counsel that "if settlement discussions d[id] not progress," Defendants were "prepared to" not only sue and publicize such lawsuit to the media, but "[e]ngag[e] with the Office of Securities Fraud and Financial Crimes at the New Jersey Office of the Attorney General to ensure a thorough investigation into [Plaintiffs]' conduct." (*Id.*)

Press's recitation of the events leading up to the filing of the instant case differs slightly from Plaintiffs' counsel's recitation. (*See generally* Defs.' Opp'n Br., ECF No. 14.) Press maintains that he contacted General Counsel for FNRP, Naqvi, "for settlement negotiations only" in late January 2025 about a possible lawsuit that Defendants were considering filing against Plaintiffs. (*Id.* at 1.) Naqvi then put Press in contact with Plaintiffs' counsel. (*Id.* at 2.) Press maintains that, as a courtesy and to help facilitate settlement negotiations, he then sent a courtesy copy of the Draft Complaint to Plaintiffs' counsel. (*Id.*) The courtesy copy of the Draft Complaint that he sent to Plaintiffs' counsel was designated for "settlement purposes only." (*Id.*)

According to Press, settlement negotiations began over the next two weeks, where he immediately communicated to Plaintiffs' counsel a monetary demand for settlement. (*Id.*) Press avers that although there were many back-and-forth correspondences, Plaintiffs' counsel "failed to negotiate in good faith and did not communicate back a settlement figure, or any counter-offer of any kind. . . ." (*Id.* at 3.) Then, in the midst of negotiating with Plaintiffs' counsel, on February 10, 2025, Press called "Bareentto to continue settlement talks and try to have . . . Plaintiffs . . . provide a counter offer, which they had not . . . provided." (*Id.*) In response, Bareentto told him that he was "*working on something, and [he would] call [him] back in 20 minutes.*" (*Id.*) Press

further indicated that, after not hearing back from Bareentto for over three hours, he later learned

through PACER that Bareentto mispresented that he would call him back "*in 20 minutes.*" (*Id.*)

That is, Press represents that the "something" that Bareentto was "working on" in his conversation

with him "was apparently the instant Complaint, Motion for a Temporary Restraining Order, and

supporting documents against . . . Defendants." (*Id.*)

### B.    Procedural History

Against that backdrop, on February 10, 2025, Plaintiffs felt compelled to file the instant

Complaint and Motion for a Temporary Restraining Order and Preliminary Injunction to enjoin

Defendants from filing the Draft Complaint until the Court determines whether the claims in the

Draft Complaint are subject to the arbitration clauses contained in the parties' Agreements.[2]

(Compl. ¶ 69.) In their Complaint, Plaintiffs bring three counts against Defendants: (1) declaratory

judgment that the Agreements and arbitration provisions therein are valid and enforceable and that

the Agreements require Defendants to arbitrate the claims set forth in the Draft Complaint (Count

I); (2) failure to arbitrate under the Agreements (Count II); and (3) injunctive relief (Count III).

(*Id.* ¶¶ 76-95.)

## II.    LEGAL STANDARD

"Preliminary injunctive relief is an extraordinary remedy and should be granted only in

limited circumstances." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004)

(internal quotation marks and citation omitted). A preliminary injunction (or temporary restraining

---

[2] It is unclear from the Complaint whether Plaintiffs filed a demand for arbitration with the American Arbitration Association ("AAA"). (*See generally* Compl.) Instead, it appears that the parties were in early negotiations. (*See id.*)

order)[3] may be granted only if plaintiffs establish that: (1) "they are likely to succeed on the merits of their claims"; (2) "they are likely to suffer irreparable harm without relief"; (3) "the balance of harms favors them"; and (4) "relief is in the public interest." *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 131 (3d Cir. 2017) (citation omitted). "A plaintiff's failure to establish any element in its favor renders a preliminary injunction inappropriate." *NutraSweet Co. v. Vit-Mar Enters. Inc.*, 176 F.3d 151, 153 (3d Cir. 1999) (citation omitted).

The movant bears the burden of establishing "the threshold for the first two 'most critical' factors . . . . If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). A court may issue an injunction to a plaintiff "only if the plaintiff produces evidence sufficient to convince the district court that all four factors favor preliminary relief." *AT&T v. Winback & Conserve Program*, 42 F.3d 1421, 1427 (3d Cir. 1994) (citation omitted); *see also P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005) ("The burden lies with the plaintiff to establish every element in its favor, or the grant of a preliminary injunction is inappropriate.")

---

[3] A request for a temporary restraining order is subject to the same standard as a request for a preliminary injunction. *See Ace Am. Ins. v. Wachovia Ins. Agency Inc.*, 306 F. App'x 727, 730-31 (3d Cir. 2009).

### III.    DISCUSSION

Plaintiffs move for injunctive relief on the basis that, despite the parties' Agreements purportedly requiring the parties to arbitrate disputes, Defendants, among other things[4], "threatened" to file suit on their allegations set forth in the Draft Complaint. (*See generally* Pls.' Moving Br. 3, ECF No. 3.) Plaintiffs claim that, if the Draft Complaint is publicly filed, they will suffer immediate and irreparable injury in the form of reputational harm and loss of goodwill resulting from filing the "frivolous" lawsuit.[5] (*See generally id.*) Defendants, on the other hand, argue that: (1) the motion is not ripe because there was no "claim or controversy" at the time Plaintiffs filed the instant case; (2) Plaintiffs waived the purported arbitration clause by filing the instant case[6]; and (3) the motion is moot because they have no intention of filing the Draft Complaint in the District of New Jersey. (Defs.' Opp'n Br. 4.) Defendants, however, admit to filing "a complaint" against Plaintiffs in the United States District Court for the Eastern District of New York on February 11, 2025 (the "EDNY Complaint").[7] (*Id.* at 4 n.4.)

Before addressing the preliminary injunction factors, the Court must first determine if Plaintiffs' Motion for a Preliminary Injunction is moot due to Defendants' filing of the EDNY

---

[4] Defendants also expressed their intention to: (1) issue a public statement to identify and assist other investors who have been similarly defrauded; and (2) engage with the Office of Securities Fraud and Financial Crimes Prosecutions at the New Jersey Office of the Attorney General to ensure a thorough investigation into Plaintiffs' conduct. (Bareentto Cert. Ex. 2, at 1.)

[5] Plaintiffs further maintain that the filing of the Draft Complaint "would [cause] irreparable damage to FNRP's business reputation, financial stability, and ongoing operations." (Pls.' Moving Br. 12.)

[6] The Court declines to address Defendants' argument regarding waiver at this juncture.

[7] During the Court's February 13, 2025 telephone status conference with the parties, Press in fact confirmed that the EDNY Complaint contained substantially similar allegations as the Draft Complaint. The EDNY Complaint is captioned *May, et al. v. First National Realty Partners LLC, et al.*, No. 25-780 (E.D.N.Y.).

Complaint. *Shapiro v. Barber*, No. 22-5396, 2022 WL 16748733, at \*2 (D.N.J. Nov. 7, 2022) (finding that a court should not address the preliminary injunction factors before first determining mootness issues); *see also Hargis, Jr. v. Atl. Cnty. Just. Facility*, No. 10-1006, 2010 WL 5464253, at \*2 (D.N.J. Dec. 28, 2010) (determining mootness before moving to the preliminary injunction factors). For the reasons set forth below, Plaintiffs' Motion for a Preliminary Injunction is moot.

A United States federal court can only adjudicate live cases and controversies. *Rendell v. Rumsfeld*, 484 F.3d 236, 240 (3d Cir. 2007). Article III of the United States Constitution states, "[t]he judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution." U.S. CONST. ART. III, § 2. The exercise of judicial power, therefore, "depends upon the existence of a case or controversy." *Rendell*, 484 F. 3d at 240 (quoting *Int'l Bhd. of Boilermakers v. Kelly*, 815 F.2d 912, 914 (3d Cir. 1987)). In order to constitute a case or controversy, a dispute must be, *inter alia*, "a legal controversy that is real and not hypothetical." *Id.* (quoting *Boilermakers*, 815 F.2d at 915).

In the case of preliminary injunctions, courts may deny injunctive relief for mootness when the requested relief can no longer be granted due to a change in circumstances. *Bower v. Cannon*, No. 17-10905, 2018 WL 4204441, at \*3 (D.N.J. Sept. 4, 2018) (denying as moot a request for a preliminary injunction to restrain a prison from unconstitutional actions against an inmate when the inmate was no longer housed at the facility); *see also Scott v. Manenti*, No. 15-7213, 2016 WL 11679538, at \*2 (D.N.J. Dec. 9, 2016) (denying as moot a request for a preliminary injunction mandating proper medical treatment for plaintiff's injury when plaintiff had already received the relief requested); *see also Shapiro*, 2022 WL 16748733, at \*2 (denying as moot a request for a preliminary injunction requesting requiring placement on a federal election ballot when ballots had already been mailed without the name).

Here, Plaintiffs' Motion for a Preliminary Injunction seeks to prevent the filing of Defendants' Draft Complaint or a complaint with similar allegations in any court, which has already happened. (*See generally* Pls.' Moving Br.) A day after Plaintiffs filed the instant action, on February 11, 2025, Defendants filed the EDNY Complaint against Plaintiffs, which contains substantially similar allegations as the Draft Complaint. This is precisely what Plaintiffs sought to prevent by way of preliminary injunction—enjoining Defendants from publicly filing any claims that are the same or similar to the claims in the Draft Complaint in a federal or state court. As such, Plaintiffs' requested relief can no longer be granted due to a change in circumstances.

Under certain circumstances, however, there can be an exception to the "live controversy" requirement for preliminary injunctions, known as the "capable of repetition" exception, even if the preliminary injunction is otherwise moot. *Rendell*, 484 F.3d at 241. That exception only applies where: "(1) the challenged action is, in its duration, too short to be fully litigated prior to cessation or expiration[;] and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Id.* (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)). This, however, is a narrow exception to be reserved only for "exceptional situations." *Id.* (quoting *City of L.A. v. Lyons*, 461 U.S. 95, 109 (1983)). Here, Plaintiffs failed to demonstrate that this presents an exceptional situation that falls within the narrow exception.

In sum, given that the filing of the EDNY Complaint, which contains allegations substantially similar against Plaintiffs, has now occurred and Plaintiffs fail to demonstrate that the "capable of repetition" exception applies, Plaintiffs' request to temporarily enjoin Defendants from

filing such complaint is, therefore, denied as moot.[8] Accordingly, Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction is denied.[9]

## IV.    CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction is denied. An Order consistent with this Memorandum Opinion will be entered.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[8] Even further, the Court was apprised on March 7, 2025 by the parties that Defendants voluntarily dismissed without prejudice the EDNY Complaint. (ECF Nos. 26, 27.)

[9] Even if the Court reached the merits of the temporary requested relief regarding the filing of the Draft Complaint, Plaintiffs have not carried their burden of showing that the extraordinary relief of injunctive relief is warranted at this time.