**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

FIRST NATIONAL REALTY PARTNERS LLC, *et al.*,

             Plaintiffs,

v.

JAMES MAY, *et al.*,

             Defendants.

Civil Action No. 25-1119 (MAS) (JBD)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

    This matter comes before the Court upon Plaintiffs First National Realty Partners LLC; FNRP Realty Advisors LLC; Anthony Grosso; Christopher Palermo; Jared Feldman; Andrew Denardo; Kurt Padavano; Bill Comeau; Fred Battisti, Jr.; Michael Hazinski; Andrea Boitnott; Sam Collier; Mike Law; Andrea White; Brandywine Crossing Realty Fund LLC; Champions Village Realty Fund LLC; PC Center Realty Fund LLC; Crowe's Crossing Realty Fund LLC; HV Center Realty Fund LLC; McAlpin Square Realty Fund LLC; Sand Hill Plaza Realty Fund LLC; Southland Crossings Realty Fund LLC; SS Tulsa Center Realty Fund LLC; Summerdale Plaza Realty Fund LLC; Village At Pitt Mills Realty Fund LLC; Westwood SC Realty Fund LLC; PC Center TIC 1 Member LLC; CTS Center Realty Fund LLC; CS Center Realty Fund LLC; CK Center Realty Fund LLC; Tropicana Centre LV Realty Fund LLC; McAlpin Square TIC 5 LLC; Maple Park SC TIC 12 Member LLC; Tannehill TIC 5 LLC; and Bishops Corner SC Realty Fund LLC's (collectively, "Plaintiffs") Motion for Order to Show Cause why Mack Press, Esq. ("Press") should not be held in contempt for violation of the Court's June 5, 2025 Order. (ECF No. 46.) Press

opposed (ECF Nos. 47-48), and Plaintiffs replied (ECF No. 49). After careful consideration of the parties' submissions, the Court decides Plaintiffs' Motion without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons outlined below, Plaintiffs' Motion is denied as moot.

## I.   BACKGROUND

The Court, cognizant that it writes for the benefit of the parties familiar with this matter, adopts and incorporates the factual background set forth in the Court's Memorandum Opinion dated June 5, 2025 (the "June 2025 Opinion"), denying Plaintiffs' Motion for a Temporary Restraining Order ("TRO") and Preliminary Injunction ("PI"). (June 2025 Op., ECF No. 43.) In today's Memorandum Opinion, the Court only recites facts and the procedural history necessary to contextualize Plaintiffs' motion.

On February 10, 2025, Plaintiffs filed their instant Complaint against Defendants James May, Anthony Musto, Patricia Thomas, Jonathan Ciangiulli, Abba Kader, Cory Tereick, and Stanley Gruber (collectively, "Defendants").[1] (*See generally* Compl., ECF No. 1.) In the Complaint, Plaintiffs bring three counts against Defendants: (1) declaratory judgment that the agreements and arbitration provisions therein are valid and enforceable and that the agreements require Defendants to arbitrate the claims outlined in Defendants' proposed draft complaint ("Draft Complaint"); (2) failure to arbitrate under the agreements; and (3) injunctive relief. (*Id.* ¶¶ 76-95.) On the same day, Plaintiffs also filed a Motion for a TRO and PI, requesting the Court to enjoin Defendants from filing the Draft Complaint until the Court determined whether the claims in the

---

[1] Defendants filed suit on February 11, 2025, in the United States District Court for the Eastern District of New York, a complaint "contain[ing] substantially similar allegations as the Draft Complaint." (June 2025 Op. 9, 9 n.7.) Shortly after, on March 7, 2025, the Court was apprised by the parties that Defendants voluntarily dismissed their complaint in their E.D.N.Y. action without prejudice. (*Id.* at 12 n.8.)

Draft Complaint were subject to the arbitration clauses contained in the parties' agreements (ECF No. 2), which the Court denied as moot in its June 2025 Opinion (*see generally* June 2025 Op.).

On March 5, 2025, Plaintiffs filed a Motion to Compel Arbitration and Stay Litigation. (ECF No. 25.) The basis for Plaintiffs' Motion for Order to Show Cause why Press should not be held in contempt for violation of the Court's June 5, 2025 Order stems from Plaintiffs' Motion to Compel Arbitration and Stay Litigation. (*See generally* Pls.' Mot. for O.S.C., ECF No. 46.) That is, Defendants' then counsel, Press, filed numerous requests for extension of time to file an opposition to Plaintiffs' Motion to Compel Arbitration and Stay Litigation. (*See* ECF Nos. 31-32, 35-38.) The basis for Press's extension requests was that he needed to undergo and recover from medical procedures. (*See id.*) Press's first request for an extension was on March 14, 2025 (ECF No. 31), and his final request was on April 14, 2025 (ECF No. 38).

After Press's final request for an extension of time on April 14, 2025, Plaintiffs' Counsel, Omar A. Bareentto, Esq. ("Bareentto"), filed a letter on April 14, 2025, suggesting that the reasons set forth in Press's correspondence requesting extensions were, in fact, not true. (Defs.' Apr. 14, 2025 Correspondence 2, ECF No. 39.) More specifically, Bareentto first pointed out that, in Press's correspondence to the Court, he represented that "[Bareentto] 'did not communicate' any opposition to the 'requested [s]econd extension of time." (*Id.* at 1 (quoting Press's Apr. 14, 2025 Letter, ECF No. 36).) Bareentto asserts that this is false and that he did, in fact, communicate that he opposed Press's request for additional time to Press's partner, David Vermont, Esq. (*Id.*) Second, Bareentto alluded to the fact that Press's basis for his extension requests seemingly contradicted his explanation for needing additional time to respond to the Motion to Compel Arbitration and

Stay Litigation. (*Id.* at 1-2.)[2] Concerned with Press's candor and presentation regarding his extension requests, the Court "[ordered] [Press] to respond to [Bareentto]'s correspondence (ECF No. 39) by June 12, 2025." (Text Order, ECF No. 45.)

Against that backdrop, June 12, 2025 came and went without a response from Press. On June 13, 2025, Plaintiffs filed a Motion for Order to Show Cause why Press should not be held in contempt for violation of the Court's June 5, 2025 Order. (*See generally* Pls.' Mot. for O.S.C.) In their Motion, Plaintiffs "ask[] [] this Court [to] order [Press] to show cause why [he] should not be held in contempt for violation of the Court's Order." (*Id.* at 2.) The next day, on June 14, 2025, Press filed a response to the Court's June 5, 2025 Order, and filed a supplemental response on June 17, 2025. (ECF Nos. 47-48.)

Press, in his response to the Court's June 5, 2025 Order, represents that "[his] communications regarding [his] medical situation were at all times completely truthful." (Press's Resp. to Ct.'s Text Order 1, ECF No. 47.) Press further represents that, "due to medical reasons, since April[] 2025, [he] ha[s] not been employed by Securities Arbitration Law Group, PLLC ("SALG") (i.e., the law firm of record for the Defendants in this case)[—]or practiced law." (*Id.*) Press went on to note that, in April 2025, he "informed the Senior Attorney at SALG[—]David Vermont[—]that due to medical reasons[,] [he] was unable to continue working on any cases for the firm (including the [instant] case)." (*Id.* at 2.) In response, Vermont informed Press "that SALG had engaged another law firm, The Berg Firm, to work with SALG in this litigation." (*Id.*) Shortly

---

[2] Specifically, Bareentto affixes, as Exhibit A to his correspondence, a compilation of Press's purported Instagram posts dated April 6, 2025, March 23, 2025, and March 15, 2025. (Ex. A to Defs.' Apr. 14, 2025 Letter, ECF No. 39-1.) Press's April 6, 2025 Instagram caption to his post states, "YMCA Brunch in assless chaps . . . ." (*Id.*) Press's March 23, 2025 Instagram caption to his post states, "another day in paradise ! OCEAN DRIVE, Miami, @ Willys for Big Ass drinks . . . ." (*Id.*) And, Press's March 15, 2025 Instagram caption states "off the block restaurant/steakhouse in Bayport, New York . . . ." (*Id.*)

4

after, Press "made the decision to formally sever [his] relationship with SALG and to stop practicing law altogether" and notified Vermont on May 1, 2025 regarding his decision. (*Id.*)[3]

In response to Press's June 14, 2025 correspondence, Plaintiffs filed correspondence on June 25, 2025, indicating that Press "effectively conceded that Defendants are not currently represented by an attorney admitted to practice before the Court."[4] (Pls.' Reply to Press's Resp. to Ct.'s Text Order 1, ECF No. 49.) At that time, Press remained sole counsel for Defendants and had not moved to withdraw as counsel for Defendants. (*See id.*) Plaintiffs thus requested that the Court direct Press to clarify whether he will continue as counsel of record for Defendants, or whether Defendants will proceed pro se, given that no other attorney has appeared on their behalf. (*See id.*) On the same day as Plaintiffs' responsive correspondence, H. Jonathan Rubinstein, Esq. ("Rubinstein"), of The Feinsilver Law Group, P.C. filed a Notice of Appearance on behalf of Defendants. (Rubinstein's Notice of Appearance, ECF No. 50.)

## II. LEGAL STANDARD

Courts possess "inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966) (citing *United States v. United Mine Workers of America*, 330 U.S. 258, 330-32 (1947) (Black, J., concurring)). Sanctions for civil contempt serve to "compel future compliance with a court order, [and] are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard." *Int'l Union, United Mine Workers of*

---

[3] Press notes that he has not been practicing law and does not expect to do so in the foreseeable future because of his medical condition. (Press's Resp. to Ct.'s Text Order 2.)

[4] Plaintiffs also point out that Press's physician, Alexander P. Hughes, M.D., represented to the Court that Press is "unable to perform [] tasks required of him to practice law." (Pls.' Reply to Press's Resp. to Ct.'s Text Order 1 (quoting Ex. to Press's Supp. Resp. to Ct.'s Text Order 1, ECF No. 48-1).)

*America v. Bagwell*, 512 U.S. 821, 827 (1994). When determining sanctions for civil contempt, a district court may impose a wide range of penalties, including incarceration, fines, or a reimbursement of costs to the complainant. *Ne. Women's Ctr., Inc. v. McMonagle*, 939 F.2d 57, 70 (3d Cir. 1991) ("[D]istrict courts have broad discretion to fashion an appropriate civil contempt remedy."). To prove civil contempt, a movant must demonstrate that: (1) a valid court order existed; (2) the defendant had knowledge of the order; and (3) the defendant disobeyed the order. *See Harris v. City of Philadelphia*, 47 F.3d 1311, 1326 (3d Cir. 1995) (citing *Roe v. Operation Rescue*, 919 F.2d 857, 871 (3d Cir. 1990)). The movant must establish these elements by clear and convincing evidence. *Id.* at 1321 (citing *Quinter v. Volkswagen of America*, 676 F.2d 969, 974 (3d Cir. 1982)). Notably, a court should not find contempt "[w]here there is any reason to doubt the wrongfulness of the [alleged contemnor's] conduct." *FTC v. Lane Labs-USA, Inc.*, No. 00-3174, 2011 WL 5828518, at *2 (D.N.J. Nov. 18, 2011) (citing *John T. ex rel. Paul T. v. Del. Cnty. Intermediate Unit*, 318 F.3d 545, 552 (3d Cir. 2003)). "Willfulness[, however,] is not an element of contempt, nor does evidence of good faith bar a conclusion that a defendant acted in contempt." *Id.* (citing *Robin Woods Inc. v. Woods*, 28 F.3d 396, 399 (3d Cir. 1994)).

### III. DISCUSSION

Plaintiffs argue that Defendants' violation of the Court's June 5, 2025 Order warrants an order to show cause why Press should not be held in contempt for violation of the Court's June 5, 2025 Order. (Pls.' Mot. for O.S.C. 1.) A day after Plaintiffs filed their motion, on June 14, 2025, Press responded to the Court's June 5, 2025 Order, noting that, due to medical conditions, he has not practiced law since April 2025. (Press's Resp. to Ct.'s Text Order 1.) Press further informed the Court that he terminated his association with the law firm of SALG. (*Id.* at 2.) In response to Press's correspondence, Plaintiffs request the Court to direct Press to clarify whether he intends to

continue serving as Defendants' counsel—and thereby remain responsible for the legal and ethical obligations attendant to that role—or whether Defendants will proceed pro se because no other attorney has entered an appearance on their behalf. (Pls.' Reply to Press's Resp. to Ct.'s Text Order 1.) On the same day, Rubinstein filed a Notice of Appearance on behalf of Defendants. (*See* Rubinstein's Notice of Appearance.)

Plaintiffs filed a Motion for an Order to Show Cause, which technically requests "a preliminary order directing the alleged contemnor to show cause why the court should not find him in contempt." *United States S.E.C. v. Hyatt*, 621 F.3d 687, 696 (7th Cir. 2010). In a case like this one, however, where the parties have briefed the issue and it would not prejudice the parties, "[a] request for a show cause order usually will be entertained and treated as a motion," and may be granted or denied on the merits. *See id.* 696(citation omitted).

A district court may, within its discretion, impose sanctions for civil contempt. *Elkin v. Fauver*, 969 F.2d 48, 52 (3d Cir. 1992) (citing *United Mine Workers*, 330 U.S. at 303); *Roe*, 919 F.2d at 869. The purposes of civil contempt sanctions are: "[(1)] to coerce . . . compliance with the [] [o]rder[;] and [(2)] to compensate for losses sustained by the [opposing party due to the] disobedience." *Marshak v. Treadwell*, 595 F.3d 478, 494 (3d Cir. 2009) (quoting *Robin Woods*, 28 F.3d at 400). If a civil contempt order is coercive in nature, the general rule is that it is mooted when the proceeding out of which it arises terminates, but if the need for the contempt order survives the termination of the underlying proceeding, such as when a party must be compensated for costs and injuries, then the contempt order does not become moot. *See United States v. Harris*, 582 F.3d 512, 515-16 (3d Cir. 2009).

Here, Plaintiffs seek a coercive contempt order—that the Court order Press to clarify whether he intends to continue to represent Defendants or whether Defendants will be proceeding

pro se. (*See* Pls.' Reply to Press's Resp. to Ct.'s Text Order 1.) Plaintiffs do not seek attorneys' fees or expenses. (*See generally id.*; *see also* Pls.' Mot. for O.S.C.) Just as compliance with a civil contempt order makes the order moot, compliance with the moving party's original demand moots the motion to hold the opposing party in civil contempt where the moving party does not request monetary sanctions for its time and expense.[5] *See Marshall v. Whittaker Corp., Berwick Forge & Fabricating Co.*, 610 F.2d 1141, 1145 (3d Cir. 1979) ("A[n] [order] of civil contempt becomes moot after being purged because the court's order cannot be disobeyed again: to purge a civil contempt citation is to comply with all aspects of the underlying order."); *see also Jaeger v. Massis*, No. 00-7390, 2000 WL 1678778, at *2 (2d Cir. Nov. 3 , 2000) (explaining that when a civil contempt sanction is compensatory, the contempt order does not necessarily abate when the proceedings out of which it arose are terminated). Because Rubenstein filed a notice of appearance, and Plaintiffs did not request attorneys' fees or expenses, the Court denies Plaintiffs' Motion as moot. *See Matter of Establish Inspection of Metal Bank of Am., Inc.*, 700 F.2d 910, 913 (3d Cir. 1983) (finding the appeal moot because the contemnor complied with the coercive contempt order and thus purged its contempt); *see also Travelers Prop. Cas. of Am. ex rel. Goldman v. Pavilion Dry Cleaners*, No. 04-1446, 2005 WL 1366530, at *5 (D.N.J. June 7, 2005) (declining to consider whether the court should award monetary sanctions because the plaintiff did not seek it in its motion).

---

[5] In other words, because relief from the contempt order would not afford Plaintiffs any remedy, the motion is moot. *See Davies v. Grossmont Union High Sch. Dist.*, 930 F.2d 1390, 1394 (9th Cir. 1991).

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Order to Show Cause why Press should not be held in contempt for violation of the Court's June 5, 2025 Order is denied as moot. The Court will issue an Order consistent with this Memorandum Opinion.

_____
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE