UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FIRST NATIONAL REALTY PARTNERS LLC, *et al.*, | Civ. No. 25-1119 (MAS)(JBD) |
| Plaintiffs, | MEMORANDUM ORDER |
| v. | |
| JAMES MAY, *et al.*, | |
| Defendants. | |

Defendants in the above-captioned case, Civil Action No. 25-1119 (hereinafter, "*May*"), and plaintiffs in *McGrath et al. v. First National Realty Partners, LLC, et al.*, Civil Action No. 25-13714 (hereinafter, "*McGrath*"), move to consolidate the *May* and *McGrath* cases. First National Realty Partners, LLC ("FNRP")—plaintiff in *May* and defendant in *McGrath*—opposes the motion.[1] Upon review of the parties' submissions, and considering the procedural posture of the cases and applicable law, the Court concludes that consolidation is premature and therefore denies the motion without prejudice.

I.      BACKGROUND

FNRP is a private equity firm specializing in domestic commercial real estate investments. [Dkt. 1] ¶ 5. FNRP serves as an investment sponsor, creating and managing commercial real estate investment opportunities for its investor partners.

---

[1]     In addition to FNRP, numerous individuals and investment entities that FNRP sponsored are named as plaintiffs in *May* and defendants in *McGrath*. For simplicity's sake, however, the Court refers only to FNRP.

*Id.* FNRP's core business involves raising funds from high-net-worth accredited investors and using the acquired capital to purchase shopping centers and other types of commercial properties. *Id.* Relevant here, FNRP sold shares in various funds, structured as LLCs, which, in turn, purchased commercial properties for investment (the "Underlying Properties"). [Dkt. 51] ¶ 1 n.3, 56; *McGrath*, [Dkt. 1] ¶ 1 n.2; 72. Defendants in *May* and plaintiffs in *McGrath* invested in these funds. The disputes in both cases concern those investments.

Specifically, throughout 2022 and 2023, the *May* defendants collectively invested about $12.2 million in 21 separate FNRP-sponsored funds, and the *McGrath* plaintiffs collectively invested about $9.4 million in 28 FNRP-sponsored funds. [Dkt. 51] ¶¶ 1 n.3, 36-56, 111-117; *McGrath*, [Dkt. 1] ¶¶ 1 n.2, 44-72, 139. In connection with these investments, each investor and the corresponding investment funds entered into written agreements containing an arbitration clause. [Dkt. 1] ¶¶ 55-60; [Dkts. 7, 22]; [Dkt. 72] at 7.

Several years after their initial investments, counsel for a group of investors that ultimately became the *May* defendants began accusing FNRP and its agents of fraud. [Dkt. 1] ¶ 61, 70. In February 2025, counsel for these investors presented FNRP with a draft complaint that the investors intended to file, which included a range of claims based on allegations that FNRP defrauded them into investing into various funds that held commercial real estate. [Dkt. 1] ¶¶ 62, 70. After efforts to avoid litigation regarding these claims failed, FNRP preemptively filed suit against

2

the investors in the *May* case.  Several months later, other investors sued FNRP in *McGrath* asserting similar claims.

### A.   *May*

On February 10, 2025, FNRP filed a complaint in the *May* case seeking to enjoin defendants from filing their draft complaint or commencing any action based on the same or similar allegations.  [Dkt. 1.]  Specifically, FNRP brings three counts against the *May* defendants:  (1) declaratory judgment that the agreements and arbitration provisions therein are valid and enforceable and that the agreements require the defendants to arbitrate the claims asserted in their draft complaint; (2) failure to arbitrate under the agreements; and (3) injunctive relief.  *Id.* ¶¶ 76-95. In addition to their complaint, FNRP filed a motion for a temporary restraining order and preliminary injunction, which the Court denied.  [Dkts. 2, 43, 44.]  FNRP also filed a motion to compel arbitration and stay litigation after defendants filed a complaint against them in the United States District Court for the Eastern District of New York that was virtually identical to the draft complaint that they had previously presented.  [Dkt. 25] at 17-21.  With that motion still pending, on June 25, 2025, the *May* defendants filed an answer to the complaint along with several counterclaims.  [Dkt. 51.]

In broad terms, the counterclaims allege that FNRP engaged in a "conspiracy to defraud [the *May* defendants] with respect to their investments" in the LLCs, by, among other things, engaging in a "systematic pattern of deception and fraud in connection with" their marketing and sale of investment shares in the various

LLCs, "paying illegal commissions to their salespersons," "overvaluing the Underlying Properties," "making unauthorized transfers and distributions," and making a host of misrepresentations about the financial health of the Underlying Properties and the agreements entered into with investors. *Id.* ¶¶ 1-14. Based on this alleged conduct, the *May* defendants bring 30 common law and state and federal statutory causes of action against FNRP. *Id.* ¶¶ 118-286.

In light of the pending motion to compel arbitration and stay litigation, the parties in *May* have agreed to defer the deadline for FNRP to answer or otherwise respond to the counterclaims, if necessary, until 21 days after the Court rules on that motion. [Dkt. 54.]

### B.   *McGrath*

On July 24, 2025, roughly one month after the *May* defendants filed their counterclaims, the *McGrath* plaintiffs—again, investors in FNRP-sponsored funds backed by commercial real estate properties—filed a complaint in this Court against FNRP. *McGrath*, [Dkt. 1]. Like the *May* defendants' counterclaims, the *McGrath* complaint alleges, *inter alia*, that FNRP engaged in a "conspiracy to defraud [the *McGrath* plaintiffs] with respect to their investments in the [relevant LLCs]," by, among other things, engaging in a "systematic pattern of deception and fraud in connection with" their marketing and sale of investment shares in the various LLCs, "paying illegal commissions to their salespersons," "overvaluing the Underlying Properties," "making unauthorized transfers and distributions," and making a host of misrepresentations about the financial health of the Underlying

Properties. *Id.* ¶¶ 1-13. Based on this conduct, the *McGrath* plaintiffs bring 34 common law and state and federal statutory causes of action against FNRP, which are similar in substance to the counterclaims asserted in the *May* case. *Id.* ¶¶ 140-337.

### C.   Motion to Consolidate and Subsequent Proceedings

On September 9, 2025, the *May* defendants and *McGrath* plaintiffs filed the present motion to consolidate the two cases, which FNRP opposes. [Dkts. 66, 68.] Shortly after the parties completed briefing on the motion, they agreed to defer defendants' deadline to answer or otherwise respond to the complaint in *McGrath*, if necessary, until 21 days after the Court rules on that motion. *McGrath*, [Dkt. 14]. Given the similarity in the two cases, the parties also agreed that the Court's ruling on the pending motion to compel arbitration in *May* will be binding on and applicable to the parties in *McGrath*. *Id.*

## II.   LEGAL STANDARDS

Federal Rule of Civil Procedure 42(a) provides, in pertinent part, that "[i]f actions before the court involve a common question of law or fact, the court may . . . consolidate the actions." Fed. R. Civ. P. 42(a)(2). "The burden is on the moving party to show that consolidation is appropriate." *MicroBilt Corp. v. Fid. Nat. Info. Servs.*, Civ. No. 12-3861 (JAP), 2012 WL 4955267, at *2 (D.N.J. Oct. 16, 2012) (citing *In re Consol. Parlodel Litig.*, 182 F.R.D. 441, 444 (D.N.J. 1998)). A "prerequisite" for consolidation is a "common question of law or fact shared by all of the cases." *Parlodel*, 182 F.R.D. at 444. However, the presence of common issues

5

does not require consolidation. *Id.*  Rather, "[t]he decision to consolidate rests in the sound discretion of the district court." *Id.*; *accord Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.*, 149 F.R.D. 65, 80 (D.N.J. 1993) ("Rule 42(a) gives the district court broad powers" to determine whether consolidation is appropriate (quotation omitted)).

"In exercising its discretion, a court should weigh 'the interests of judicial economy against the potential for new delays, expense, confusion, or prejudice.'" *Parlodel*, 182 F.R.D. at 444 (quotation omitted); *see also In re TMI Litig.*, 193 F.3d 613, 724 (3d Cir. 1999) ("The purpose of consolidation is 'to streamline and economize pretrial proceedings so as to avoid duplication of effort, and to prevent conflicting outcomes in cases involving similar legal and factual issues.'" (quotation omitted)).  Accordingly, "[a] motion to consolidate may be denied if the common issue is not a principle one, if it will cause delay in one of the cases, or will lead to confusion or prejudice in the trial of a case." *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, Civ. No. 02-4146 (ES), 2007 WL 9725164, at *2 (D.N.J. July 26, 2007) (citation omitted).  Similarly, "[w]here the evidence in one case is not relevant to the issues in the other, consolidation would create a likelihood of prejudice by confusing the issues," and should be denied.  *Ford Mktg.*, 149 F.R.D. at 81.  Finally, "a court may deny consolidation when one case is further into the discovery process" or are at "different stages of preparation for trial." *Ford Motor*, 2007 WL 9725164, at *2 (citations omitted).

6

## III.    DISCUSSION

Upon review of the parties' motion papers, the Court agrees with FNRP that consolidation is not appropriate at this time.  The Court therefore denies, without prejudice, the motion to consolidate the two cases.  The *May* defendants and *McGrath* plaintiffs argue that consolidation is appropriate because "the factual and legal issues in the [cases] substantially overlap . . . such that consolidating the two matters would greatly serve the interests of both equity and judicial economy," as "[c]onsolidation would eliminate unnecessary repetition[,] confusion[,] [and] the risk of inconsistent outcomes."  [Dkt. 66-2] at 5-6.  They also argue that consolidation is appropriate because "[n]o party will suffer any prejudice" if the matters are consolidated.  *Id.* at 6.

FNRP, on the other hand, argues that the Court should deny the motion on the following grounds:  (1) the motion is procedurally improper because the *McGrath* defendants had not been properly served at the time it was filed[2]; (2) the two cases do not share substantially overlapping questions of law or fact sufficient to warrant consolidation; and (3) consolidation would unfairly prejudice FNRP.  [Dkt. 68] at 11-13.

To warrant consolidation, the *May* defendants and *McGrath* plaintiffs, as the moving parties, must demonstrate that the two cases share common issues of law or fact.  *Parlodel*, 182 F.R.D. at 444.  The Court concludes that they have met their

---

[2]    On the Court's review of the *McGrath* docket, it appears that all *McGrath* Defendants have now been served.  The Court thus does not address this aspect of FNRP's argument.

7

burden here:  Both the *McGrath* complaint and *May* counterclaims stem from the investors' allegations that "they were defrauded by [FNRP] into investing in various [LLCs] that held commercial real estate, primarily shopping centers anchored by big-box stores and grocery stores."  [Dkt. 66-1] ¶¶ 3, 5-7.

More specifically, the complaint in *McGrath* and counterclaims in *May* contain many of the same general allegations.  *Compare* [Dkt. 51] ¶¶ 1-14, 56-110 *with McGrath*, [Dkt. 1] ¶¶ 1-13, 72-138.  Indeed, the "Nature of the Case" sections in the two pleadings differ only in that they can contain different investment amounts, and the *May* counterclaims add one additional paragraph of allegations. [Dkt. 51] ¶¶ 7, 13; *McGrath*, [Dkt. 1] ¶ 12.  The "Facts" sections are—with some degree of variation[3]—also largely and substantively the same.  *Compare* [Dkt. 51] ¶¶ 56-110 *with McGrath*, [Dkt. 1] ¶¶ 72-138.  In addition, the *McGrath* complaint and *May* counterclaims contain thirteen identical or virtually identical counts.[4] Moreover, even if not identical, most of the causes of action in each case arise under the same laws and differ in only minor respects.[5]  The relief requested is also nearly the same.  [Dkt. 51] ¶¶ 287-293; *McGrath*, [Dkt. 1] ¶¶ 338-344.

---

[3]      *See* [Dkt. 51] ¶¶ 72, 74, 76-78, 81, 83, 91-98; *McGrath*, [Dkt. 1] ¶¶ 78, 81-84, 92, 93, 95-96, 108-117, 119-126, 138.

[4]      *See* [Dkt. 51] ¶¶ 135-148, 179-183, 208-213, 225-230, 237-242, 260-286; *McGrath*, [Dkt. 1] ¶¶ 157-170, 186-190, 216-221, 229-234, 247-252, 311-337.

[5]      *Compare* [Dkt. 51] ¶¶ 118-134, 149-165, 172-178, 184-207, 214-219, 231-236, 243-259 *with McGrath*, [Dkt. 1] ¶¶ 140-156, 171-185, 191-215, 222-228, 235-240, 253-265, 288-295, 306-310.

The Court thus agrees with the *May* defendants and *McGrath* plaintiffs that the underlying facts and law at issue in the two cases are substantially similar and substantially overlap. The fundamental factual and legal theory that the investors pursue in each case is that FNRP defrauded them in connection with their investments in FNRP-sponsored commercial real estate investment opportunities. The Court has little trouble concluding that there is substantial commonality in fact and law in the two cases.[6]

Nonetheless, "the mere existence of common issues does not require consolidation." *Shire LLC v. Watson Lab'ys, Inc.*, Civ. No. 12-83 (MAS), 2012 WL 12902495, at *2 (D.N.J. June 20, 2012). As noted, the Court "should weigh the interests of judicial economy against the potential for new delays, expense, confusion or prejudice" before consolidating the cases. *Id.* (citing *Parlodel*, 182 F.R.D. at 444). Given the present procedural posture of the cases, the Court concludes that consolidation is not appropriate at this time.

Specifically, the Court agrees with FNRP that consolidation at this point will unnecessarily delay things, or at a minimum, complicate them. It would likely result in a consolidated pleading that could disrupt the pending motion to compel

---

[6] The Court appreciates that the *McGrath* complaint and *May* counterclaims differ in some respects. For example, there are some funds at issue in *McGrath* that are not at issue in *May* (and vice versa), and the parties to each case are not identical. Additionally, there are some statutory causes of action in the *May* counterclaims that are not asserted in the *McGrath* complaint (and vice versa). On the whole, though, there are enough similarities between the two cases to satisfy the Court that the *May* defendants and *McGrath* plaintiffs have met "the threshold requirement" of demonstrating that common questions of law or fact permeate both cases. *Ford Motor*, 2007 WL 9725164, at *2.

arbitration, potentially requiring new motion practice.  On that note, given the motion, there is an open question whether these cases will remain in this Court at all.  (To be clear, the Court here offers no view or prediction on the outcome of that motion.)  In this posture and with the motion to compel arbitration pending, there is little reason to consolidate the cases now.  The *May* defendants and *McGrath* plaintiffs will suffer no prejudice by awaiting the Court's decision on the motion to compel arbitration, and the Court is open to potential consolidation, or at least coordination, if that motion is denied.[7]

## IV.   CONCLUSION

Exercising the Court's broad discretion and for the foregoing reasons, the motion to consolidate the *May* and *McGrath* cases [Dkt. 66] is DENIED without prejudice.

**IT IS SO ORDERED** this 26th day of March, 2026.

J. BRENDAN DAY
UNITED STATES MAGISTRATE JUDGE

---

[7]     Indeed, if the cases remain in this Court, pretrial coordination in some fashion would seem, at a minimum, to make good sense.