**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| FIRST NATIONAL REALTY PARTNERS LLC, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>JAMES MAY, *et al.*,<br><br>Defendants. | Civil Action No. 25-1119 (MAS) (JBD)<br><br>**MEMORANDUM ORDER** |

**SHIPP, District Judge**

This matter comes before the Court upon Plaintiffs'[1] Motion to Compel Arbitration and Stay Litigation. (ECF No. 25.) Defendants[2] opposed (ECF No. 40), Plaintiffs replied (ECF No. 42), Defendants filed a sur-reply (ECF No. 55-2), and Plaintiffs filed a sur-sur-reply (ECF No. 71). The

[1] There are thirty-five plaintiffs in this matter, who will be referred to collectively as "Plaintiffs" or by designated groups. The first two Plaintiffs are referred to individually as First National Realty Partners LLC ("FNRP") and FNRP Realty Advisors LLC. "Individual Plaintiffs" collectively refers to Anthony Grosso, Christopher Palermo, Jared Feldman, Andrew Denardo, Kurt Padavano, Bill Comeau, Fred Battisti, Jr., Michael Hazinski, Andrea Boitnott, Sam Collier, Michael Law, and Andrea White.

"Realty Fund Plaintiffs" collectively refers to Plaintiffs Crowe's Crossing Realty Fund LLC, CTS Center Realty Fund LLC, McAlpin Square Realty Fund LLC, HV Center Realty Fund LLC, PC Center Realty Fund LLC, Tannehill TIC 5 LLC, Maple Park SC TIC 12 Member LLC, Brandywine Crossing Realty Fund LLC, Champions Village Realty Fund LLC, PC Center TIC 1 Member LLC, McAlpin Square TIC 5 LLC, Sand Hill Plaza Realty Fund LLC, Southland Crossings Realty Fund LLC, SS Tulsa Center Realty Fund LLC, Summerdale Plaza Realty Fund LLC, Village At Pitt Mills Realty Fund LLC, Westwood SC Realty Fund LLC, CS Center Realty Fund LLC, CK Center Realty Fund LLC, Tropicana Centre LV Realty Fund LLC, and Bishops Corner SC Realty Fund LLC.

[2] "Defendants" collectively refers to Jonathan Ciangiulli, Stanley Gruber, Abba Kader, James May, Anthony Musto, Cory Tereick, and Patricia Thomas.

Court has carefully considered the parties' submissions and reaches its decision without oral argument under Local Civil Rule 78.1(b). For the reasons stated below, the Court denies Plaintiffs' motion.

This matter involves extensive procedural history and complex facts. The Court, therefore, only identifies the facts and procedural history required to resolve the instant motion. FNRP is a "private equity firm specializing in commercial real estate investments[.]" (Verified Compl. ("Compl.") ¶ 5, ECF No. 1.) Individual Plaintiffs are owners, corporate officers, and employees of FNRP. (*Id.* ¶¶ 7-18.) "In or around 2022 and 2023, Defendants invested money in a variety of FNRP funds." (*Id.* ¶ 47.) Each of Defendants executed either a Subscription Agreement[3] or both a Tenancy-in-Common Agreement[4] and an Asset Management Agreement[5] (collectively, the "Agreements") with the fund in which they were investing. (*Id.* ¶¶ 48-59.) Some Defendants invested in multiple types of funds or properties and therefore executed all three types of agreements. (*Id.* ¶¶ 48-49, 55-56, 59.)

Each Subscription Agreement contains a broad arbitration provision (the "SA Arbitration Provision") stating:

---

[3] The Subscription Agreements are located at ECF Nos. 7-1, 7-2, 7-3, 7-7, 7-8, 7-11, 7-12, 7-13, 7-14, 7-15, 7-18, 7-19, 7-20, 7-21, 7-23, 7-24, 7-25, 7-26, and 7-27 (collectively cited to as the "Subscription Agreements"). To the extent that any Subscription Agreement may be sealed from the public docket, a redacted version can be found at the corresponding attachment number at ECF No. 22.

[4] The Tenancy-in-Common Agreements are located at ECF Nos. 7-4, 7-5, 7-6, 7-9, 7-10, 7-16, 7-17, and 7-22 (collectively cited to as the "Tenancy-in-Common Agreements"). To the extent that any Tenancy-in-Common Agreement may be sealed from the public docket, a redacted version can be found at the corresponding attachment number at ECF No. 22.

[5] The Asset Management Agreements are located at ECF Nos. 7-28, 7-29, 7-30, 7-31, 7-32, 7-33, and 7-34 (collectively cited to as the "Asset Management Agreements"). To the extent that any Asset Management Agreement may be sealed from the public docket, a redacted version can be found at the corresponding attachment number at ECF No. 22.

> Any controversy between Subscriber and the Fund and/or the Managing Member involving the Fund, this Agreement, or the Operating Agreement will be submitted to arbitration on the request of any party to any such controversy in the county and state in which the Managing Member maintains its principal office at the time such request is made. The arbitration will comply with and be governed by the provisions of the commercial arbitration rules of the American Arbitration Association . . . . By signing this Agreement, Subscriber agrees to waive his or her or its right to seek remedies in court, including any right to a jury trial[.]

(Subscription Agreements 13.) Five of the seven Defendants executed a Subscription Agreement with one or more of the Realty Fund Plaintiffs. (*See generally id.*)

Each Tenancy-in-Common Agreement contains a similarly broad arbitration provision (the "TIC Arbitration Provision") stating:

> ALL CLAIMS SUBJECT TO ARBITRATION. ANY DISPUTE[,] CONTROVERSY OR OTHER CLAIM ARISING UNDER, OUT OF OR RELATING TO THIS AGREEMENT OR ANY OF THE TRANSACTIONS CONTEMPLATED HEREBY, OR ANY AMENDMENT THEREOF, OR THE BREACH OR INTERPRETATION HEREOF OR THEREOF, SHALL BE DETERMINED AND SETTLED BY BINDING ARBITRATION[.]

(Tenancy-in-Common Agreements § 8.18.1.) The Tenancy-in-Common Agreements also contain a waiver of legal rights providing that the parties agree to have "ANY DISPUTE ARISING OUT OF THIS TRANSACTION DECIDED BY NEUTRAL ARBITRATION[.]" (*Id.* § 8.18.2.) These waiver clauses were initialed by the named defendant who is a party to each respective contract. (*Id.*)

Each Asset Management Agreement contains a narrow arbitration provision (the "AMA Arbitration Provision") which provides that "[a]ny controversy arising out of, or related to, any dispute as set forth in Section 2.5.1 shall be settled by binding arbitration[.]" (Asset Management Agreements § 2.5.5.) Section 2.5.1 generally concerns the budget and operating plan. (*Id.* § 2.5.)

Each Asset Management Agreement corresponds to a property and contract signed by a Defendant in a Tenancy-in-Common Agreement.[6]

On or about January 31, 2025, General Counsel for FNRP, Zain Navqi ("Navqi"), and Counsel for Defendants, Mack Press ("Press"), had a phone call in which they discussed a potential lawsuit by Defendants against Plaintiffs. (Compl. ¶ 61.) On February 2, 2025, Press emailed Navqi a draft complaint which he planned to file in this District. (*Id.* ¶ 62.) According to Plaintiffs, on February 4, 2025, Press and Navqi spoke over the phone, and Plaintiffs suggested mediation as a potential way to resolve the issues alleged in the draft complaint, but Press rejected the idea. (*Id.* ¶¶ 63-64.) After additional correspondence between the parties, on February 7, 2025, Press sent Plaintiffs a revised draft complaint (the "Draft Complaint") via e-mail correspondence. (*Id.* ¶¶ 65-66; *see generally* Ex. 1 to Feb. 27, 2025, Decl. of C. Palermo (the "Draft Compl."), ECF No. 21-1.) Plaintiffs' counsel responded to Press's e-mail correspondence informing Press that "Defendants' claims in the Draft Complaint were required to be arbitrated, not litigated[.]" (Compl. ¶ 67.) Press rejected Plaintiffs' position that the claims raised in the Draft Complaint required arbitration and, on February 10, 2025, Press re-expressed his intent to file the Draft Complaint. (*Id.* ¶¶ 67-68.) On February 10, 2025, Plaintiffs filed the present Complaint in this Court, bringing three counts against Defendants: (1) declaratory judgment that the arbitration provisions are valid and enforceable and govern the allegations in the Draft Complaint ("Count

[6] The Tenancy-in-Common Agreements located at ECF Nos. 7-4, 7-5, 7-6, 7-9, 7-10, 7-16, 7-17, 7-22 correspond to the Asset Management Agreements located at ECF Nos. 7-28, 7-29, 7-30, 7-31, 7-32, 7-33, 7-34.

One"); (2) a claim for failure to arbitrate ("Count Two"); and (3) injunctive relief keeping Defendants from filing the Draft Complaint ("Count Three").[7] (*Id.* ¶¶ 69, 76-95.)

The next day, on February 11, 2025, Defendants filed a complaint in the Eastern District of New York (the "E.D.N.Y. Complaint"). (E.D.N.Y. Compl., No. 25-780, ECF No. 1 (E.D.N.Y. Feb. 11, 2025).) The E.D.N.Y. Complaint was nearly identical to the Draft Complaint, although it altered one count to allege a violation of New York General Business Law § 349 rather than the corresponding New Jersey law. (*Compare id.* ¶¶ 123-34, *with* Draft Compl. ¶¶ 123-34.)

On March 5, 2025, Plaintiffs filed the instant Motion to Compel Arbitration and Stay Litigation in response to the filing of the E.D.N.Y. Complaint. (*See generally* Mot. to Compel, ECF No. 25.) In support of the instant motion, Plaintiffs argue that Defendants entered valid and binding agreements to arbitrate and should be held to the terms of those agreements. (*See generally* Pls.' Moving Br., ECF No. 25-1.) On March 7, 2025, Defendants voluntarily dismissed their E.D.N.Y. Complaint without prejudice and informed the Court. (Defs.' Mar. 7, 2025, Correspondence, ECF No. 26.)

On June 25, 2025, Defendants filed counterclaims (the "Counterclaims") against a subset of Plaintiffs in this matter. (*See generally* Countercls., ECF No. 51.) The Counterclaims allege ten counts that are substantially similar to the counts contained in both the Draft Complaint and

[7] Plaintiffs filed a Temporary Restraining Order on the same day, February 10, 2025 (Mot. For Temporary Restraining Order, ECF No. 2), which was denied on June 5, 2025, as moot (June 5, 2025, Mem. Op., ECF No. 43; June 5, 2025, Order, ECF No. 44).

E.D.N.Y. Complaint,[8] nineteen counts of violations of various state securities laws, and one count of a violation of the New Jersey Criminal Justice Act of 1970. (*See generally id.*) Notably, Defendants did not file counterclaims against any Realty Fund Plaintiffs who were parties to the Subscription Agreements[9], even though Realty Fund Plaintiffs were named as defendants in the E.D.N.Y. Complaint. (*Compare* E.D.N.Y Compl., *with* Countercls.; *see* Defs.' Suppl. Mem. 4, ECF No. 55-2.) In light of the exclusion of Realty Fund Plaintiffs from the Counterclaims, Defendants argue that no Counterclaim-Plaintiff signed a contract with a Counterclaim-Defendant. (Defs.' Suppl. Mem. 4.)

The Court finds that Plaintiffs' motion should be denied for two main reasons. *First*, Plaintiffs are explicitly seeking "an order staying this litigation and compelling Defendants to submit the claims made in the ***Draft Complaint*** to arbitration." (Pls.' Moving Br. 30 (emphasis added).) The Draft Complaint, however, has not been filed, and, therefore, any opinion regarding the arbitrability of the claims as contained in the Draft Complaint would be advisory. *See Burkey v. Marberry*, 556 F.3d 142, 149 (3d Cir. 2009) (noting that district court may not render an advisory opinion as "'[t]he duty of [the] court . . . is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions'"

[8] The Counterclaims that are similar to those from the Draft Complaint and the E.D.N.Y. Complaint are: (1) fraudulent inducement; (2) fraud, equitable fraud, and/or fraudulent concealment; (3) negligent misrepresentation; (4) negligence and gross negligence; (5) conspiracy; (6) unjust enrichment; (7) respondeat superior; (8) mail fraud and wire fraud; (9) violation of 18 U.S.C. § 1962(c); and (10) violation of 18 U.S.C. § 1962(d) by conspiracy to violate 18 U.S.C. § 1962(c). (*Compare* E.D.N.Y. Compl. ¶¶ 91-148, *with* Draft Compl. ¶¶ 91-148, *and* Countercls. ¶¶ 118-148, 268-86.)

[9] Defendants also declined to file counterclaims against Individual Plaintiffs Andrea Boitnott, Sam Collier, Michael Law, and Andrea White, and added a party that was not an original plaintiff: First National Property Management, LLC. (*See generally* Countercls.)

(alterations in original) (citation omitted)); *Flast v. Cohen*, 392 U.S. 83, 96 n.14 (1968) (noting long-established rule against advisory opinions).

*Second*, to the extent Plaintiffs seek to compel Defendants to arbitrate their claims in the E.D.N.Y. Complaint, such a request is moot. Defendants voluntarily dismissed their E.D.N.Y. Complaint after Plaintiffs brought this motion (*see* Defs.' Mar. 7, 2025, Correspondence) and Defendants represent that they have "no present intent to re-file such claims in Court" (Defs.' Opp'n Br. 9, ECF No. 40). Moreover, after Plaintiffs filed the instant motion, Defendants filed their Counterclaims, which contain some similarities to the Draft Complaint and the E.D.N.Y. Complaint, but are not identical. (*Compare* E.D.N.Y. Compl. ¶¶ 91-148, *with* Draft Compl. ¶¶ 91-148, *and* Countercls. ¶¶ 118-148, 268-86.)

The Court, accordingly, denies Plaintiffs' motion to compel arbitration of the claims as contained in the E.D.N.Y. Complaint or the Draft Complaint.[10]

Based on the foregoing,

**IT IS**, on this 27th day of August 2026, **ORDERED** as follows:

1. Plaintiffs' Motion to Compel Arbitration and Stay Litigation (ECF No. 25) is **DENIED without prejudice**.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

[10] Should Plaintiffs wish to compel arbitration of the Counterclaims, Plaintiffs must file a motion seeking that relief. Where, as here, the motion was filed before any such Counterclaims were filed, the present motion could not address a request for such relief.